No. 99-655

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 38

298 Mont. 279

995 P. 2d 455

ANTHONY EVANS,

Petitioner,

v.

MONTANA ELEVENTH JUDICIAL DISTRICT

COURT, FLATHEAD COUNTY, and THE

HONORABLE KATHERINE CURTIS, Judge thereof,

Respondents

ORIGINAL PROCEEDING: Writ of Supervisory Control

COUNSEL OF RECORD:

For Appellant:

Julianne Hinchey; Hinchey Law Offices, Kalispell, Montana

For Respondents:

Hon. Joseph P. Mazurek, Attorney General; Tammy K. Plubell,

Assistant Attorney General; Helena, Montana

Tom Esch, Flathead County Attorney, Kalispell, Montana

_____

Submitted: January 20, 2000

Decided: February 11, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1.Youth-Petitioner Anthony Evans (Evans) has made an application to this Court for a Writ of Supervisory Control directing the Eleventh Judicial District Court, Flathead County, to grant Evans' motion to suppress and to dismiss the case against him pending in Flathead County Cause No. DJ-99-092 (A). We grant the petition for supervisory control and accept original jurisdiction over this matter pursuant to Article VII, Section 2(2) of the Montana Constitution and Rule 17(a), M.R.App.P. We hold that the District Court erred in denying Evans' motion to suppress and order that the court grant said motion. We decline to direct the District Court to dismiss the proceedings against Evans on the record before us, and remand for further proceedings consistent with this Opinion.

Issues

¶2. Whether this Court should exercise jurisdiction in this matter.

¶3. Whether the District Court erred in denying Evans' motion to suppress.

¶4. Whether, upon suppression of the confession, the case against Evans should

be dismissed.

## Standards of Review

¶5.The standard of review of a district court's denial of a motion to suppress is whether the court's interpretation and application of the law is correct. State v. Hubbel (1997), 286 Mont. 200, 207, 951 P.2d 971, 975 (citation omitted).

¶6.The grant or denial of a motion to dismiss in a criminal case is a question of law which we review *de novo*. *See*, *e. g.*, State v. Reams (1997), 284 Mont. 448, 450, 945 P.2d 52, 54 (citation omitted).

## Factual and Procedural Background

¶7.On July 7, 1999, the Flathead County Sheriff's Office began investigating the drowning death of Megan Lamanna (Lamanna) of Hungry Horse, Montana, who had been reported missing the previous day. The Sheriff's Office received information that fourteen-year-old Evans had been observed talking with Lamanna on the day of her disappearance and decided to interview Evans. Deputy Meyers and another officer went to Evans' residence and left a note for Evans' mother, Tresa Snyder (Snyder), and stepfather, Robert Snyder, requesting they contact Meyers because he needed to "talk to Anthony ASAP." Snyder contacted Meyers on July 8, 1999 and set up an appointment for her to bring Evans to the Sheriff's Office the following day. When Snyder and Evans missed this appointment, another officer went to the Snyder home and made arrangements with Snyder for an appointment on July 13, 1999.

¶8.Snyder later testified that she brought Evans to the

Flathead County Sheriff's Office because the officers had requested it and because she felt that people were unfairly accusing her son of Lamanna's death and she wanted to get the matter cleared up. She asserts that she did not feel as if she had a choice whether to bring Evans to the Sheriff's Office.

¶9.Snyder and Evans were separated when they arrived at the Sheriff's Office on July 13, 1999. Deputies Meyers and Parker first questioned Snyder for approximately thirty minutes. The officers did not tell Snyder whether or not Evans was a suspect in Lamanna's death. They did not inform Snyder of Evans' right to remain silent or his right to an attorney. Snyder and Evans were not given an opportunity to talk before Evans was questioned; thus, Snyder was not able to discuss Evans' right against self-incrimination and right to counsel or waiver thereof with her son.

¶10.Deputy Meyers led Evans to a 9'x9' windowless interrogation room through what he later described as a sort of "rat maze." There, Evans was advised of his *Miranda* rights. He signed a waiver of his *Miranda* rights outside of the presence and without consent of his mother and without an opportunity to discuss his rights or waiver thereof with counsel. Evans was then interrogated by Meyers and Parker, wearing badges and weapons, for approximately two and one-half hours. During this time, the door to the interrogation room remained shut. Evans did not leave the room during the entire two and one-half hours, although the officers took occasional breaks. The officers did not tell him he could leave nor give him the opportunity to consult with his mother. During the course of the interview, Snyder requested contact with Evans on a couple of occasions, but was denied contact with her son.

¶11.During the interview, Myers misled Evans into believing that the police had fingerprints from Lamanna's body and

would check them against Evans'. Evans adamantly denied involvement in Lamanna's death and only stated that he was responsible for her death toward the end of the two and one-half hour interview after the officers had repeatedly told him he had "more to tell them."

¶12. After admitting that he drowned Lamanna, Evans was charged with Lamanna's death, arrested, handcuffed, and escorted to juvenile detention. He was not given an opportunity to speak with his mother. Evans has been in custody at the Juvenile Detention Center in Kalispell, Montana since his arrest.

¶13. Evans filed a motion to suppress his confession in District Court on the basis that his waiver of rights while in custody, without consent of his parent or advice of counsel, was invalid under § 41-5-331, MCA, and that his confession was not knowing and voluntary. Evans also moved to dismiss the case against him for lack of evidence. Following a hearing, the court denied Evans' motions, concluding that Evans was not in custody during the interview and that his confession was given voluntarily.

## Discussion

¶14. Whether this Court should exercise jurisdiction in this matter.

¶15. We are reluctant to exercise supervisory control as it is an extraordinary remedy. *See* State ex rel. O'Sullivan v. District Court (1946), 119 Mont. 429, 431, 175 P.2d 763, 764. Supervisory control, however, is appropriate where the district court is proceeding under a mistake of law and, in so doing, is causing a gross injustice. *See*, *e.g.*, State ex rel. Forsyth v. District Court (1985), 216 Mont. 480, 484, 701 P.2d 1346, 1348; Potter v. District Court (1994), 266 Mont. 384, 388, 880 P.2d 1319, 1322.

¶16.Here, the District Court is proceeding under a mistake of law because it concluded that Evans was not in custody during the interview and that § 41-5-331, MCA, had thus not been violated. We hold that the statute was violated and that Evans' confession should have been suppressed. It would be grossly unjust to subject a fourteen-year-old defendant, who has already been in custody for approximately six months, to a trial based on an illegally obtained confession. The remedy of an appeal would, contrary to the State's contention, be inadequate under these circumstances. Given that we have not had prior occasion to apply § 41-5-331, MCA, and determine whether a youth is "in custody for purposes of questioning," we determine that supervisory control is appropriate. We thus grant Evans' petition for supervisory control and accept original jurisdiction over this matter pursuant to Art. VII, Sec. 2(2), Mont. Const., and Rule 17(a), M.R.App.P.

¶17.. Whether the District Court erred in denying Evans' motion to suppress.

¶18.Section 41-5-331, MCA, provides in relevant part:

**Rights of youth taken into custody - questioning - waiver of rights. (1) When a youth is taken into custody for questioning upon a matter that could result in a petition alleging the youth is either a delinquent youth or a youth in need of intervention, the following requirements must be met:**

(a) The youth must be advised of the youth's right against self-incrimination and the youth's right to counsel. . . . .

(2) A youth may waive the rights listed in subsection (1) under the following situations: .. . . .

(b) when the youth is under 16 years of age and the youth and the youth's parent or guardian agree, they may make an effective waiver; or

(c)  when the youth is under 16 years of age and the youth and the youth's parent or guardian do not agree, the youth may make an effective waiver only with advice of counsel.

¶19. Our threshold inquiry in determining whether Evans' confession should have been suppressed is whether Evans was "a youth taken into custody for questioning" during the interview, thus triggering the provisions of § 41-5-331, MCA. To determine whether Evans was in custody during the interview, we look to whether a "reasonable person" would have felt free to leave under the following six-factors: Place of interrogation, time of interrogation, persons present during interrogation, whether *Miranda* warnings were gratuitously given, length and mood of interrogation, and whether or not the suspect was arrested following questioning. *See* State v. Staat (1991), 251 Mont. 1, 6, 822 P.2d 643, 646. The District Court found that Evans and Snyder voluntarily went to the Sheriff's Office and agreed to separate interviews. The court concluded that "a reasonable person in Anthony's position would not have felt that he was deprived of his freedom of action in any significant way."

¶20. Our review of the record shows that Evans was "a youth taken into custody for questioning" during the interview. Fourteen-year-old Evans was questioned for two and one-half hours in a 9'x9' windowless room with shut doors. He was questioned by two officers wearing visible badges and weapons without being able to consult with his mother. He waived his *Miranda* rights without a chance to discuss his rights with his mother or counsel. The officers repeatedly suggested that Evans had "more to tell them" and misled him into believing the police had fingerprints from Lamanna's body that could be matched to his. Immediately following the interview, Evans was arrested. It is difficult to imagine a more "custodial" setting.

¶21.Whether the officers felt Evans was in custody or was free to leave during the interview is irrelevant. *See* Stansburg v. California (1994), 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (holding that determination of custody depends on the objective circumstances of the interrogation, not on the subjective views of the interrogating officers or the person being questioned). Furthermore, although the State asserts that Evans was free to leave, the officers at no point during the interview informed Evans that he did not have to answer questions, that he could talk to his mother, or that he could leave. A reasonable fourteen-year-old being questioned about the death of a child under these circumstances would surely not have felt free to leave. Under the factors set forth in *Staat*, we conclude that Evans was in custody during the interview. Thus any waiver of rights without the consent of a parent or the advice of counsel is invalid under § 41-5-331, MCA. The District Court incorrectly concluded that Evans was not in custody during the interview and erred in denying Evans' motion to suppress.

¶22.The District Court further erred in concluding that Evans' confession was voluntary. We have previously held that a determination of voluntariness must take into account the totality of circumstances including, among others, the following factors:

the defendant's age and level of education; the interrogation technique used by the police; whether the defendant was advised of his or her *Miranda* rights; the defendant's prior experience with the criminal justice system and police interrogation; the defendant's background and experience; and the defendant's demeanor, coherence, articulateness, and capacity to make full use of his or her faculties.

State v. Loh (1996), 275 Mont. 460, 475-76, 914 P.2d 592, 601-02 (citations omitted). The District Court concluded

that Evans' confession was voluntary under the totality of circumstances.

¶23.Evans was fourteen years old with an eighth-grade education. Evans did not attend school, but was apparently home schooled or tutored. He was interrogated by two officers wearing badges and weapons for two and one-half hours in a 9'x9' windowless room. He was not able to communicate with his mother prior to or during the interview. He waived his right against self-incrimination and right to counsel without the consent of his mother or advise of counsel, in violation of § 41-5-331, MCA. The officers used misleading tactics in questioning Evans. Although Evans had some previous encounters with law enforcement and interrogation, he had never asserted his *Miranda* rights.

¶24.The court's reliance on the fact that Snyder voluntarily brought Evans to the Sheriff's Office for questioning does not establish voluntariness in light of the foregoing factors. Snyder disputes that she voluntarily brought Evans in for the interview. However, even assuming *arguendo* that she did, that would not establish Evans' voluntary appearance. It is his volition that is at issue, not hers. The State cannot rely on Snyder's presence in arguing that Evans voluntarily appeared, and then bypass her consent when it comes time to obtain a waiver of her son's rights.

¶25.Having considered Evans' confession under the totality of circumstances, we determine that Evans' confession was not voluntarily given. The District Court erred in concluding that the State proved the voluntariness of Evans' confession by a preponderance of the evidence and in denying Evans' motion to suppress on this basis.

¶26.. Whether, upon suppression of the confession, the case against Evans should be dismissed.

¶27.Evans contends that the case against him should be dismissed upon suppression of his confession because the State has no other evidence against him. We cannot, based upon the incomplete record before us, address the question of what evidence the State may or may not have against Evans. Accordingly, we deny Evans' request that we order the District Court to dismiss the charges against him.

¶28.The Petition for a Writ of Supervisory Control is granted, the order denying suppression is reversed and this matter is remanded for further proceedings consistent with this Opinion.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ KARLA M. GRAY

Justice Terry N. Trieweiler did not participate.