No. 02-456

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 224

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

BRANDY BAY,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and for the County of Custer, Cause No. DC-01-11
The Honorable Gary L. Day, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Cynthia K. Thornton, Attorney at Law, Miles City, Montana

    For Respondent:

        Hon. Mike McGrath, Attorney General; Micheal S. Wellenstein,
Assistant Attorney General, Helena, Montana

        Coleen Magera, Custer County Attorney; Paul Emerson, Deputy
County Attorney, Miles City, Montana

Submitted on Briefs:  April 17, 2003

Decided:  August 25, 2003

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 The Sixteenth Judicial District Court, Custer County, entered its judgment and sentence on a jury verdict convicting Brandy Bay (Bay) of assault on a peace officer and two counts of resisting arrest. Bay appeals from the conviction for assault on a peace officer. We affirm.

¶2 The issue on appeal is whether the evidence was sufficient to support Bay's conviction of the offense of assault on a peace officer.

FACTUAL AND PROCEDURAL BACKGROUND

¶3 Bay appeared before the Miles City City Court on February 6, 2001, on a bench warrant. During that appearance, the court found Bay in contempt of court and Miles City Police Officer Shawna Kaiser (Kaiser), who was present in the courtroom, attempted to take Bay into custody. An altercation ensued between Bay and Kaiser, and Bay was later arrested.

¶4 The State of Montana (State) ultimately charged Bay with assault on a peace officer and three counts of resisting arrest, and the District Court scheduled a jury trial. Prior to trial, the District Court dismissed one of the counts of resisting arrest on the State's motion.

¶5 At trial in the District Court, Billie Burkhalter (Burkhalter), Clerk of the Miles City City Court, testified Bay came to her desk at the City Court office prior to Bay's appearance in the City Court and said, in an intimidating manner, "I'm here on this bull shit warrant." Because she was concerned that Bay might cause trouble, Burkhalter wrote a note to Kaiser asking Kaiser to remain in the area during Bay's appearance in the City Court. Burkhalter

2

heard the judge find Bay in contempt and saw Bay start to exit the courtroom. Kaiser raised her hand and told Bay to stop, but Bay continued towards Kaiser and shoved her "very hard," causing Kaiser to fall back. Kaiser then pushed Bay up against a wall, causing a picture to fall down. The two struggled and Kaiser attempted to do a "leg sweep" maneuver of Bay with her right leg. Kaiser then screamed out in pain and fell to the ground. Bay stood for a moment before picking up an object from the floor and running out of the building.

¶6 The City Court Judge testified that when Bay appeared before him, she refused to answer his questions, even to confirm her identity. After he warned Bay that she could be jailed for contempt, Bay attempted to leave the courtroom. The judge told Bay she was in contempt and instructed her not to leave, and Kaiser attempted to prevent her from leaving. From his location, the judge could not see Bay as she approached Kaiser, but he heard Kaiser tell Bay not to leave, the noise of a struggle, and Kaiser saying that she was hurt and asking for an ambulance.

¶7 Kaiser testified she heard the judge hold Bay in contempt. Kaiser also heard the judge tell Bay that Kaiser was going to take her to jail; Bay responded she was not going to jail and then attempted to leave the courtroom. Kaiser positioned herself between Bay and the exit, put out her hand and told Bay to stop. Bay continued walking towards Kaiser and, upon reaching her, shoved her hard, knocking her backwards. Kaiser testified that the shove hurt. She then attempted to grab Bay's arms so she could handcuff her, but Bay continued to break free. At some point in the struggle, Bay knocked Kaiser's glasses from her face.

3

Kaiser grabbed Bay by her coat and turned her against the wall. She then attempted a "leg sweep" maneuver of Bay by bringing up her own right leg and using her knee to strike a nerve in Bay's left leg. As Kaiser lifted her right leg and Bay continued to struggle with her, Kaiser's left knee gave out, causing her to drop to the ground in pain. Kaiser testified she rolled onto her right side to protect her firearm. Bay stepped over her, picked an object up from the ground and left.

¶8　Bay was arrested a short time later at a local restaurant where, according to the testimony of Miles City Police Lieutenant Marty Hagemeister, she again resisted arrest. It took three officers to get her handcuffed and into a patrol car.

¶9　Following the trial, a jury found Bay guilty of assault on a peace officer and two counts of resisting arrest. The District Court sentenced Bay and entered judgment. Bay appeals from the conviction for assault on a peace officer.

## STANDARD OF REVIEW

¶10　We review the sufficiency of the evidence to support a conviction by determining whether, when the evidence is viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Stevens*, 2002 MT 181, ¶ 23, 311 Mont. 52, ¶ 23, 53 P.3d 356, ¶ 23 (citations omitted).

## DISCUSSION

¶11　Is the evidence sufficient to support Bay's conviction of the offense of assault on a peace officer?

¶12     In this case, assault on a peace officer consists of purposely or knowingly causing bodily injury to a peace officer. *See* § 45-5-210(1)(a), MCA. Bay maintains that her actions do not meet the statutory requirements for the offense. She contends that Kaiser's knee injury was not caused by Bay's actions because Kaiser's knee merely gave out under her own body weight. Bay asserts, on that basis, that the State did not present sufficient evidence regarding the requisite mental state for the offense because she did not purposely or knowingly cause bodily injury to Kaiser. Bay's arguments focus almost entirely on Kaiser's knee injury and the purported lack of sufficient evidence to support a causal link between Bay's actions and that injury.

¶13     The State asserts, however, that we need not determine whether Bay purposely or knowingly caused Kaiser's knee injury; we need only examine the evidence–in the light most favorable to the prosecution–to determine whether it would permit a rational jury to find the elements of assault on a peace officer beyond a reasonable doubt. We conclude evidence unrelated to the knee injury is sufficient to meet this test.

¶14     "Bodily injury" means "physical pain, illness, or an impairment of physical condition." Section 45-2-101(5), MCA. Burkhalter and Kaiser both testified that, prior to Kaiser injuring her knee, Bay shoved Kaiser hard enough to knock her backwards. Burkhalter described the shove as "very hard," and Kaiser testified that it hurt. Bay denies she shoved Kaiser, but the determination of the credibility of witnesses and weight of the evidence is within the province of the jury. *See State v. Landis*, 2002 MT 45, ¶ 30, 308 Mont. 354, ¶ 30, 43 P.3d 298, ¶ 30 (citation omitted). The evidence is sufficient to support

a jury finding that Bay caused Kaiser bodily injury by shoving her hard enough to cause Kaiser physical pain. *See* § 45-2-101(5), MCA. Having established the evidence supports a finding of the bodily injury element of the offense, we turn to the question of whether Bay acted purposely or knowingly.

¶15 "A person acts knowingly with respect to the result of conduct described by a statute defining an offense when the person is aware that it is highly probable that the result will be caused by the person's conduct." Section 45-2-101(34), MCA. The appreciation of the probable risk posed by a person's conduct constitutes a "knowing" action by the person. *See State v. Lambert* (1996), 280 Mont. 231, 236, 929 P.2d 846, 849. "[A] person acts purposely with respect to a result or to conduct described by a statute defining an offense if it is the person's conscious object to engage in that conduct or to cause that result." Section 45-2-101(64), MCA. The result required for the offense of assault on a peace officer is that the officer suffer bodily injury. *See* § 45-5-210(1)(a), MCA.

¶16 A person's mental state rarely can be proved by direct evidence; it usually must be inferred from the facts and circumstances about which the witnesses testify. *State v. Longstreth*, 1999 MT 204, ¶ 34, 295 Mont. 457, ¶ 34, 984 P.2d 157, ¶ 34. Indeed, a defendant's mental state may be inferred from his or her actions and the facts and circumstances connected with the offense charged. *See* § 45-2-103(3), MCA.

¶17 In the present case, trial testimony reflected that Bay's demeanor was "agitated" from the time she entered the courtroom and her tone of voice was "snotty" and "vicious" as she

spoke to the judge. Burkhalter listened closely to Bay's conversation with the judge because she anticipated that Bay "was going to go off."

¶18 After the City Court Judge found Bay in contempt and informed her that she was to be taken into custody, Bay tried to leave the courtroom. Bay stated that she was not going to jail. Indeed, Bay's admitted intention was to leave the courtroom without being taken into custody by Kaiser. Kaiser, a uniformed police officer, stood in Bay's path as Bay tried to leave, put out her hand and told Bay to stop. Bay continued walking towards Kaiser and shoved Kaiser hard, knocking her backwards. According to Burkhalter, Bay walked into Kaiser and shoved her "very hard" and "in one continuous motion." From these facts and circumstances, including Bay's actions and stated intention to leave without being taken into custody, a jury could reasonably infer that Bay was aware of the high probability that her conduct in shoving Kaiser hard enough to knock Kaiser backwards would result in physical pain to Kaiser and, therefore, that Bay acted "knowingly."

¶19 On this record, we conclude a rational jury could determine beyond a reasonable doubt that Bay acted knowingly in causing Kaiser bodily injury. We hold the evidence presented at trial is sufficient to support Bay's conviction of the offense of assault on a peace officer.

¶20 Affirmed.

/S/ KARLA M. GRAY

7

We Concur:


/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE