No. 03-606

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 71

IN THE MATTER OF C.L.,

    A Youth.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade Cause No. ADJ-02-188(b)
Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Lawrence A. LaFountain, Deputy Public Defender, Great Falls,
Montana

    For Respondent:

        Honorable Mike McGrath, Attorney General; Jim Wheelis,
Assistant Attorney General, Helena, Montana

        Brant Light, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  February 10, 2004

Decided:  March 23, 2004

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1    C.L. appeals from the dispositional order entered by the Eighth Judicial District Youth Court, Cascade County, finding him to be a delinquent youth and placing him on formal probation until the age of eighteen.  We affirm.

¶2    The issue on appeal is whether the Youth Court erred in denying C.L.'s motion to suppress his confession.

## BACKGROUND

¶3    On September 10, 2002, a fire broke out in a residence on Sixth Avenue South West in Great Falls, Montana.  Subsequent investigation by Great Falls Police Department (GFPD) detectives revealed that the fire started while three individuals in the residence were attempting to manufacture methamphetamine.  C.L. was identified as one of the individuals.  Later that day and in an attempt to locate C.L., one of the investigating detectives spoke with C.L.'s mother, B.L.  B.L. did not know where C.L. was at the time, but the following day she telephoned the detective to tell him C.L. was at home.  Detective Pat Brinkman (Brinkman) and a second detective went to C.L.'s home to speak with him.

¶4    On reaching the residence, the two detectives informed C.L. and B.L. that they wished to speak to C.L. regarding the fire the previous day.  Brinkman informed both C.L. and B.L. of C.L.'s Miranda rights and, because C.L. was only fifteen years old, Brinkman had B.L. sign a form agreeing to waive C.L.'s rights.  The detectives then transported C.L. to the

GFPD for an interview. The detectives told B.L. she could accompany C.L. to the interview, but she declined to do so.

¶5 At the GFPD, Brinkman took C.L. to an interview room and again informed C.L. of his <u>Miranda</u> rights; C.L. then signed a form agreeing to waive his rights. During the following videotaped interview, C.L. admitted being involved in attempting to manufacture methamphetamine. The State of Montana (State) subsequently filed a petition in the Youth Court alleging C.L. committed the felony offense of operating an unlawful clandestine laboratory and requesting he be declared a delinquent youth.

¶6 During the Youth Court proceedings, C.L. moved to suppress his confession. After a hearing, the Youth Court denied the motion. C.L. then pleaded true to the allegations of the petition and expressly reserved his right to appeal the denial of his motion to suppress. The Youth Court accepted the plea, declared C.L. to be a delinquent youth and entered a dispositional order. C.L. appeals.

## STANDARD OF REVIEW

¶7 We review a district court's ruling on a motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law. State v. Hoffman, 2003 MT 26, ¶ 16, 314 Mont. 155, ¶ 16, 64 P.3d 1013, ¶ 16.

## DISCUSSION

¶8 Did the Youth Court err in denying C.L.'s motion to suppress his confession?

¶9 Section 41-5-331, MCA, provides, in pertinent part, as follows:

3

(1) When a youth is taken into custody for questioning upon a matter that could result in a petition alleging that the youth is either a delinquent youth or a youth in need of intervention, the following requirements must be met:

(a) The youth must be advised of the youth's right against self-incrimination and the youth's right to counsel.

. . . .

(2) A youth may waive the rights listed in subsection (1) under the following situations:

. . . .

(b) when the youth is under 16 years of age and the youth and the youth's parent or guardian agree, they may make an effective waiver; or

(c) when the youth is under 16 years of age and the youth and the youth's parent or guardian do not agree, the youth may make an effective waiver only with advice of counsel.

In addition, any extrajudicial statement that would be constitutionally inadmissible in an adult criminal proceeding may not be received in a proceeding alleging a youth to be a delinquent youth. Section 41-5-1415(1), MCA. A confession which is not given voluntarily is constitutionally inadmissible. See Hoffman, ¶ 18.

¶10 C.L. moved to suppress his confession on the basis that his waiver of his Miranda rights was ineffective because it did not meet the requirements of § 41-5-331(2)(b), MCA, and his statements were not given voluntarily. The Youth Court determined C.L.'s waiver of rights was effective and his statements were given voluntarily, and denied the motion. C.L. asserts error.

4

¶11 C.L. first argues that his waiver of rights did not meet the requirements of § 41-5-331(2)(b), MCA, because he and his mother did not agree together to waive his rights. He contends the GFPD detectives misled his mother regarding the subject matter of the interview by telling her only that he was being questioned regarding a fire, rather than the alleged manufacture of methamphetamine, and she was not present in the interview room at the GFPD when the true nature of the interview was revealed. He asserts that his mother could not give an effective waiver of his rights without having accurate knowledge of the basis of the questioning. C.L. relies on Evans v. Montana Eleventh Jud. Dist. Court, 2000 MT 38, 298 Mont. 279, 995 P.2d 455, in support of his argument that his waiver of rights was ineffective.

¶12 At the outset, we observe that neither Evans nor § 41-5-331, MCA, require that the youth and parent agree as to the specific topic of questioning to which the waiver of rights applies in order to make the waiver effective, and C.L. advances no other authority in support of such a proposition. The statutory language simply requires that the youth and parent be made aware of the youth's various rights and agree together to waive those rights. Here, C.L. and B.L. were together when Brinkman informed them of C.L.'s rights, were given a written statement of those rights and had the opportunity while together in their home to discuss whether to waive those rights; B.L. signed the written consent to waive C.L.'s rights in his presence. Moreover, C.L. was aware that the fire in question started when he and his friends were attempting to manufacture methamphetamine and he had the opportunity while

5

at his home to discuss with his mother the potential ramifications of being questioned regarding the fire.

¶13     Moreover, Evans is readily distinguishable from the present case. In that case, Evans and his mother went to the sheriff's office together because they were aware law enforcement wished to speak to Evans regarding the drowning of a young girl. Evans, ¶ 8. Evans and his mother were immediately separated from each other and given no opportunity to talk prior to Evans being questioned. Evans' mother was never informed of Evans' rights to remain silent and to an attorney, and she had no opportunity to discuss those rights–and the waiver thereof–with him. Evans, ¶ 9. Evans was led to a small, windowless room where a law enforcement officer advised him of his rights. He then signed a waiver of his rights without his mother's consent and without discussing the waiver with her. Evans, ¶ 10. We concluded that the waiver of rights by a youth without the consent of a parent or the advice of counsel is invalid under § 41-5-331, MCA. Evans, ¶ 23.

¶14     In the present case, C.L. and B.L. were informed of C.L.'s rights while in each other's presence and in their own home. They were given the opportunity to discuss those rights and determine together whether to waive them. B.L. then agreed to waive C.L.'s rights and allow the detectives to interview him. Moreover, Brinkman told B.L. she could accompany C.L. to the GFPD for the interview, but she declined to do so.

¶15     Nothing in § 41-5-331, MCA, requires the agreement of the youth and her or his parent in the same place at the same time. C.L. was present when his mother agreed to waive his rights, and his decision to follow her lead constitutes agreement. We conclude, based on

this record, that the Youth Court did not err in determining that the waiver of C.L.'s rights met the requirements of § 41-5-331(2)(b), MCA, for an effective waiver.

¶16 C.L. also contends that the investigating detectives were deceptive in telling him and his mother that he would be fine as long as he told the truth and that they were merely inquiring about the fire the day before. He asserts that this use of deceit left him and his mother with the impression that he was not really in trouble and rendered his confession involuntary. First, our review of the testimony from the hearing on the motion to suppress reveals that it was B.L.–not the GFPD detectives–who told C.L. he would be okay if he just told the truth. Second, C.L. was involved in manufacturing methamphetamine at the residence on Sixth Avenue South West when the fire in question started. Thus, regardless of whether the detectives specifically informed him that they wished to question him about the manufacture of methamphetamine, C.L. should have been aware that any interview regarding the fire could involve questions regarding the methamphetamine. We conclude that C.L. has failed to establish that the Youth Court erred in determining that his confession was given voluntarily.

¶17 We hold that Youth Court did not err in denying C.L.'s motion to suppress his confession.

¶18 Affirmed.

/S/ KARLA M. GRAY

7

We concur:


/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER