No. 03-793

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 186

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

JEREMY CORD WOODS,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis and Clark, Cause No. CDC 94-155
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Kristina Guest, Assistant Appellant Defender, Appellate Defender Office, Helena, Montana

      For Respondent:

          Honorable Mike McGrath, Montana Attorney General, Jennifer Anders, Assistant Attorney General, Helena, Montana; Leo Gallagher, Lewis and Clark County Attorney

Submitted on Briefs:  March 30, 2005

Decided:  July 26, 2005

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Jeremy Cord Woods (Woods) appeals the First Judicial District Court's denial of his Petition for Postconviction Relief.  We affirm.

## ISSUE

¶2    The sole issue on appeal is whether the District Court erred when it denied Woods' Petition for Postconviction Relief.  Woods claims such denial was error because:  1) his trial counsel was ineffective for failing to argue that he was subject to a "classic penalty" situation;  2) his appellate counsel was ineffective for failing to raise a juror removal issue; and 3) the District Court violated his constitutional rights when it received and answered questions from the jury without informing the parties or their counsel.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    In early 1994, Woods pled guilty to three felony charges:  issuing a bad check, theft and bail jumping.  On May 26, 1994, he was sentenced to ten years at Montana State Prison (MSP) for the bad check charge, and five years suspended for each of the remaining felonies. The District Court did not recommend that Woods be placed in the Swan River Correctional Training Center, commonly known as "boot camp," but did not object when notified that Woods had applied for participation in the program.

¶4    As we explained in *Campbell v. Mahoney*, 2001 MT 146, ¶ 3, 306 Mont. 45, ¶ 3, 29 P.3d 1034, ¶ 3, boot camp is a legislative program designed to provide an alternative means of rehabilitating young felony offenders.  *See* §§ 53-30-401 to -403, MCA.  The program uses physical activity, military style discipline and intensive counseling to "correct criminal

and other maladaptive thought processes and behavior patterns and to instill self-discipline and self-motivation." Section 53-30-403(3)(b), MCA. Participation in boot camp is voluntary, and inmates who successfully complete the program are eligible to have their sentences reduced or converted to probation. Section 53-30-402, MCA. One aspect of the program is that inmates, called "trainees," must disclose all prior criminal activity. Such disclosure is mandatory for successful completion of the program. If a trainee does not comply with the disclosure requirement, he can be returned to MSP.

¶5 On July 24, 1994, Woods participated in a boot camp group anger management class. During the class, Woods confessed to having murdered his former girlfriend and her seventeen-month old child on June 28, 1993. Despite being told by Swan River officials that his disclosure in class was sufficient and that he was not required to say anything more, Woods subsequently told various members of the Swan River staff and all the boot camp trainees in his platoon of the dual murder. After returning to MSP, Woods also told various people at the prison including a hearing officer.

¶6 Acting upon Woods' statements, which included a description of the location of the bodies, the State investigated and on August 15, 1994, charged Woods by Information with two counts of deliberate homicide. Woods subsequently pled not guilty. Randi Hood, Chief Lewis and Clark County Public Defender, was appointed to represent Woods. In October 1994, Hood filed a Motion to Suppress Woods' confession. The District Court held a hearing on November 30, 1994, and denied Woods' Motion on April 28, 1995.

¶7 A jury trial was held on October 2-3, 1995. During *voir dire*, potential Juror 12

reported that he had heard about Woods' case, had read newspaper articles about it, and had watched television news coverage of the story. He repeatedly stated throughout *voir dire* that he would try, but he did not know if he could be a "fair and impartial" juror on the case. After *voir dire* questioning by both attorneys, the court engaged Juror 12 in detailed conversation in an attempt to rehabilitate him. Subsequently, the court determined that Juror 12 would be accepted. Woods' attorney asked that he be removed for cause and the court denied the request. Attorney Hood then used a peremptory challenge to remove Juror 12. Hood ultimately used all of Woods' peremptory challenges. After jury selection was completed, Woods asked to proceed *pro se*. The District Court strongly discouraged this but ultimately granted Woods' request. Woods' attorneys were ordered to remain as stand-by counsel.

¶8 During jury deliberation, the jurors submitted the following written questions to the court: "Are there any any [sic] other options available besides deliberate homicide to us on Count I?" and "Are there any more detailed definition [sic] of 'knowingly' and 'purposely'?" The court, without notifying either party of the questions, responded in writing to each question with "No."[1]

¶9 At the conclusion of jury deliberation, Woods was convicted of both counts of deliberate homicide. Mayo Ashley was appointed as appellate counsel in December 1995. At the sentencing hearing on January 2, 1996, Woods was sentenced to two consecutive life

---

[1] Woods claims he did not learn of these questions until April 1998, when in prison, he requested his District Court file to enable him to prepare a petition for postconviction relief. While reviewing the file, he discovered the written jury questions and the trial court's responses.

sentences and judged to be ineligible for parole for sixty years. Woods immediately filed an Application for Sentence Review and shortly thereafter filed a Notice of Appeal. On appeal, Woods' appellate counsel challenged the District Court's denial of Woods' Motion to Suppress and the court's ruling allowing Woods to represent himself. Counsel also argued that Woods' failure to invoke his Fifth Amendment rights was excused because he was in the "classic penalty" situation.

¶10 In June 1997, we affirmed the trial court's ruling on Woods' suppression motion and the court's determination to allow Woods to represent himself. We also held that Woods had not argued to the trial court that he had been subject to the classic penalty situation; therefore, he had waived such argument on appeal. *State v. Woods* (1997), 283 Mont. 359, 942 P.2d 88.

¶11 In April 1998, Woods filed a *pro se* Petition for Postconviction Relief alleging that both his trial and appellate counsel had been ineffective and that his confession should have been suppressed. He subsequently requested that counsel be appointed to assist him in seeking postconviction relief. The District Court declined to appoint counsel and later dismissed Woods' Petition without a hearing. In May 1999, Woods filed a timely appeal. We reversed the District Court and remanded ordering the court to appoint counsel and to hold a hearing on Woods' Petition for Postconviction Relief. In June 2001, postconviction appellate counsel Kristina Guest was appointed and in July 2002, she filed an Amended Petition for Postconviction Relief. In June 2003, the District Court held a hearing on

Woods' postconviction Petition. On August 27, 2003, the court issued its Findings of Fact, Conclusions of Law and Order denying Woods' requested relief. This timely appeal follows.

## STANDARD OF REVIEW

¶12 We review a district court's denial of a petition for postconviction relief to determine whether the court's findings of fact are clearly erroneous, and whether its conclusions of law are correct. *State v. Daniels*, 2005 MT 110, ¶ 7, 327 Mont. 78, ¶ 7, 111 P.3d 675, ¶ 7.

¶13 As we explained in *Dawson v. State*, 2000 MT 219, 301 Mont. 135, 10 P.3d 49:

> A petitioner seeking to reverse a district court's denial of a petition for postconviction relief based on a claim of ineffective assistance of counsel bears a heavy burden. *See Brown v. State* (1996), 277 Mont. 430, 434, 922 P.2d 1146, 1148. In considering ineffective assistance of counsel claims on direct appeal and in postconviction proceedings, we apply the two-pronged test set forth by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *See Hagen v. State*, 1999 MT 8, ¶ 10, 293 Mont. 60, ¶ 10, 973 P.2d 233, ¶ 10. *Strickland's* two-part test requires that the defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

*Dawson*, ¶ 20.

DISCUSSION

¶14    Woods' first claim of error is that his Petition for Postconviction Relief should have been granted because his trial counsel had ineffectively represented him. Woods argues that his confession at boot camp violated his constitutional right against self-incrimination because he was in a "classic penalty" situation, and therefore, his confession should have been suppressed. The "classic penalty" situation is one in which "the government prevents a voluntary invocation of the Fifth Amendment by threatening to penalize the individual should he or she invoke it." *State v. Fuller* (1996), 276 Mont. 155, 162, 915 P.2d 809, 813, cert. denied, 519 U.S. 930, 117 S.Ct. 301, 136 L.Ed.2d 219. Woods maintains that because his trial counsel did not present this argument, he was deprived of his fundamental right to effective legal assistance; thus, he argues, his conviction should be overturned.

¶15    The District Court ruled that while counsel did not specifically refer to the "classic penalty" situation or cite any cases which discussed it at trial, Hood did argue the boot camp requirement to fully disclose past crimes violated Woods' rights and subjected him to further penalty, noting that, had he invoked his Fifth Amendment rights, he would have been terminated from the program and returned to MSP. The court therefore went on to analyze Woods' classic penalty argument on its merits. The court observed that the critical distinction between Woods' situation and the situation of the defendants in *Fuller*, and *Minnesota v. Murphy* (1984), 465 U.S. 420, 429, 104 S.Ct. 1136, 1143, 79 L.Ed.2d 409, 420, cases on which Woods relied, was that Woods was participating in a *voluntary* program at the time he made his incriminating statements. The court noted that

7

Woods was under no legal compulsion to be in the boot camp program nor was he facing possible probation revocation or an increased sentence. At the time he made his incriminating statements, Woods was a prison inmate who had voluntarily applied for the boot camp program. If he had successfully completed it, he would have applied for a sentence reduction. . . . Prior to entering the program, Woods was fully informed that 100 percent disclosure was expected.

Thus, the District Court concluded that Woods' boot camp confession was not compelled; rather, it was voluntarily given. As a result, the court concluded that Woods was not faced with the classic penalty situation.

¶16 In addition, the District Court concluded that Woods had failed to demonstrate a reasonable probability that the result of his Motion to Suppress would have been different but for Hood's failure to make the appropriate argument. The court therefore determined that failure of Woods' trial counsel to make the "classic penalty" argument by name did not constitute ineffective assistance.

¶17 The Fifth Amendment to the U.S. Constitution, as well as Article II, Section 25 of the Montana Constitution, protects a person in a criminal matter from being compelled to make self-incriminating statements. However, it is well-established that to take advantage of this protection, a person must affirmatively invoke it, or as we commonly say--"take the Fifth." See *Fuller*, 276 Mont. at 160, 915 P.2d at 812. It is undisputed that, while participating in the boot camp program, Woods did not invoke the privilege. In other words, he did not refuse or decline to make his boot camp statements by claiming that disclosing prior crimes in accordance with the program requirements would incriminate him.

¶18   While invocation of one's Fifth Amendment rights is the general rule, there is an exception to the rule--the classic penalty situation.  If a defendant is in a situation where he is not "free to admit, deny, or refuse to answer," then his privilege against self-incrimination is automatic and self-executing.  *Fuller*, 276 Mont. at 161, 915 P.2d at 812, *citing*, in part, *Murphy*, 465 U.S. at 429, 104 S.Ct. at 1143, 79 L.Ed.2d at 420.  Woods claims that the boot camp program placed him in a classic penalty situation by presenting him with a "Hobson's choice"--incriminate himself by confessing past crimes for which he had no immunity, or "take the Fifth," refuse to disclose past crimes, and be returned to MSP with no chance for sentence reduction.  He posits that under this situation the Fifth Amendment was self-executing and the State should not have been able to use his confession to prosecute him for the confessed crimes.

¶19   We reject Woods' contention.  According to a sizable body of multi-jurisdictional case law, a critical element of a classic penalty situation is that the person is *compelled* to make statements that are self-incriminating.  Statements that are not the result of compulsion do not trigger the automatic protection under the Fifth Amendment.  *Fuller*, 276 Mont. at 160, 915 P.2d at 812 ("[I]f the State has not *compelled* the defendant to respond, the Fifth Amendment privilege does not attach.") (Emphasis in original).  In the case before us, we need not decide whether Woods' confession in the boot camp's anger management class was compelled because, in addition to admitting the double homicide in the classroom setting, Woods went on to voluntarily reveal the murders to several Swan River staff members, all the Swan River boot camp trainees in his platoon and at least one staff member of MSP.  It

is incontrovertible that Woods was under no compulsion whatsoever when he did this--in fact, Woods was counseled by the authorities on several occasions after his class confession that he need not say anything more to anyone else. Woods, however, failed to embrace the wisdom of this counsel.

¶20 Unquestionably, Woods' uncoerced statements to any one of the numerous persons to whom he voluntarily admitted the murders were sufficient to trigger the investigation that led to the charges being filed against him. Under these circumstances, we conclude that the information upon which the State relied for its investigation was not compelled by any threats of penalty from the State, and therefore, the "classic penalty" situation did not exist here. Because Woods was not in a classic penalty situation, his counsel cannot be held deficient for failing to argue that he was. As a result, we affirm the District Court's conclusion on this issue. *See Daniels*, ¶ 13 (We will affirm a correct result even if the district court reached that result for the wrong reason).

¶21 Woods' next claim of error is that his appellate counsel rendered deficient performance when he failed to raise on appeal the juror removal issue. As indicated above, potential Juror 12 had repeatedly stated during *voir dire* that he might have difficulty being a "fair and impartial" juror. The court denied attorney Hood's request to remove Juror 12 for cause; thus, she removed him with a peremptory challenge. Woods maintains that this issue was preserved on the record for appeal but that because appellate counsel Ashley failed to raise it, his representation was ineffective and deficient. Woods also argues that in postconviction proceedings, the District Court should have applied the rule we announced

10

in *State v. Good*, 2002 MT 59, ¶¶ 63 and 66, 309 Mont. 113, ¶¶ 63 and 66, 43 P.3d 948, ¶¶ 63 and 66, rather than *State v. Williams* (1993), 262 Mont. 530, 866 P.2d 1099, *overruled in part by State v. Good*, 2002 MT 59, 309 Mont. 113, 43 P.3d 948, to this issue.

¶22   In *Williams*, as in the case at bar, the district court denied Williams' challenge to a juror for cause. The juror was removed by use of a peremptory challenge and Williams ultimately used all of his peremptory challenges. We concluded that the district court abused its discretion in denying Williams' challenge for cause. We continued, however, to expressly decline to adopt the rule that such an abuse of discretion in denial of a challenge to a juror was conclusively prejudicial. Rather, we said that the defendant was required to establish that the error had contributed to his conviction. *Williams*, 262 Mont. at 537-38, 866 P.2d at 1103.

¶23   Subsequently, in 2002, we held in *Good* that a district court's abuse of discretion in failing to grant a proper challenge for cause during *voir dire* in a criminal case was structural error that is conclusively prejudicial and requires automatic reversal. In reaching this holding, we expressly overruled that portion of *Williams* requiring a defendant to establish that the error contributed to his conviction. *Good*, ¶ 66. Woods urges the retroactive application of *Good* to his 1996 appeal. He cites to *Robbins v. State*, 2002 MT 116, ¶ 19, 310 Mont. 10, ¶ 19, 50 P.3d 134, ¶ 19 ("*Robbins II*"), in which we retroactively applied a rule established in *State v. LaMere,* 2000 MT 45, 298 Mont. 358, 2 P.3d 204, to Robbins' 1997 appeal.

11

¶24    In *LaMere*, we held that failure to properly summon jurors in accordance with § 3-15-505, MCA, requires automatic reversal.  In doing so, we expressly overruled the premise upon which we previously relied in affirming Robbins' conviction.  *State v. Robbins*, 1998 MT 297, 292 Mont. 23, 971 P.2d 359 ("*Robbins I*").  After *LaMere* was decided, Robbins filed a Petition for Postconviction Relief requesting that the *LaMere* rule be applied retroactively to his case.  We did so, in no small part because Robbins had on direct appeal offered the same argument that eventually carried the day in *LaMere*.  *Robbins II*, ¶¶ 15-16.

¶25    The critical distinction between the case at bar and *Robbins* lies in the respective issues presented.  The issue here, unlike in *Robbins*, is whether, in 1996 when attorney Ashley represented Woods in his appeal, he rendered ineffective assistance by failing to appeal the juror selection error.  The issue is not one of trial court error.

¶26    When reviewing Woods' postconviction petition, it was proper for the District Court to analyze the ineffective assistance argument against the backdrop of the law *in effect at the time of the appeal--i.e.*, in 1996.  *See Dawson v. State*, 2000 MT 219, ¶ 26, 301 Mont. 135, ¶ 26, 10 P.3d 49, ¶ 26 ("In concluding that Dawson's counsel did not render ineffective assistance of counsel for failing to object to the psychiatric evaluation procedure, the District Court found that Dawson's counsel acted appropriately according to the status of the law at that time.")  The court correctly concluded that, under the facts before the court and in light of the fact that *Williams* was the law of the land in 1996, the probability of success of a *LaMere* argument at that time was slight.  It bears repeating that, to succeed, one arguing ineffective assistance of counsel must demonstrate deficient performance.  *See* ¶ 13.  Under

12

the circumstances presented here, we cannot conclude that Ashley's failure in 1996 to urge a sea change in what was at the time the established law constituted such deficient performance as to satisfy *Strickland*. As a result, we affirm the District Court's conclusion on this issue.

¶27 Finally, Woods argues that the trial court violated his constitutional rights when it received and answered questions from the jury without informing the parties or counsel. Woods maintains that the trial court's action violated his Sixth Amendment right and his right under Article II, Section 24 of the Montana Constitution to be present at all stages of his trial. Woods argues that the trial court's failure constituted structural error requiring automatic reversal of his convictions. He also maintains that the District Court violated § 46-16-121, MCA, and § 46-16-503(2), MCA, and that his absence when the court answered the jury's questions cannot be considered harmless.

¶28 In denying postconviction relief on this issue, the District Court concluded that while "Judge McCarter should have consulted with the county attorney and Woods before answering [the questions], . . . Woods . . . failed to demonstrate how this affected his constitutional rights. He has not shown that the answers were not correct or that he was prejudiced by Judge McCarter's action."

¶29 We decline to review the merits of the issue as resolved by the District Court in postconviction proceedings because Woods was procedurally barred from raising a direct claim of trial court error in postconviction relief proceedings.

Section 46-21-105(2), MCA, states:

When a petitioner has been afforded the opportunity for a direct appeal of the petitioner's conviction, grounds for relief that were or could reasonably have been raised on direct appeal may not be raised, considered, or decided in a proceeding brought under this chapter. Ineffectiveness or incompetence of counsel in proceedings on an original or an amended original petition under this part may not be raised in a second or subsequent petition under this part.

¶30 Alleged errors committed by the District Court during trial and which ostensibly affected the outcome of the case must be raised on direct appeal. Section 46-20-104, MCA. The error at issue here--the trial court's failure to consult with Woods when answering a question tendered by the jury--is just such an allegation of error. It was not raised on appeal. Thus, the provisions of § 46-21-105(2), MCA, set forth above, preclude Woods from raising the issue in postconviction proceedings.

¶31 This procedural bar was apparently overlooked by the District Court when it addressed the merits of Woods' argument, because the court misconstrued the issue before it. In its Findings of Fact, Conclusions of Law and Order denying the postconviction petition, the court stated, "In his amended petition for post conviction relief, Woods contends . . . that his appellate attorney was ineffective because . . . he failed to raise the issue of whether the district court violated Woods' constitutional right to present [sic] when it answered the jury questions." Rather than addressing the ineffective assistance of counsel claim, though, the court ruled on the merits of the underlying issue. The difference between the two issues is more than semantic.

¶32 A claim that the District Court erred during trial may not be raised in a postconviction proceeding. *See* § 46-21-105(2), MCA. However, a claim that trial counsel was ineffective

14

for failing to preserve such error for appeal may either be raised on direct appeal (if the claim is based on facts of record) or in postconviction proceedings (if such claim could not be documented from the record in the underlying case). *State v. Wright*, 2001 MT 282, 307 Mont. 349, 42 P.3d 753. Here, although Woods' postconviction counsel initially raised an ineffective assistance claim in the District Court, the District Court inappropriately reached instead the merits of the propriety of the trial court's actions. It should not have done so, because the claim was barred for the reasons set forth above.

¶33 Finally, however, we conclude that had the District Court properly addressed Woods' claim of ineffective assistance of counsel, rather than directly addressing the trial court's alleged error, we would have affirmed in any event. As stated in ¶ 26 above, we weigh an attorney's effectiveness based upon the state of the law in effect at the time assistance was rendered. In October 1995, when Woods' trial was held, the cases now relied upon by Woods to support his argument that the court had improper--and reversible--contact with the jury had not yet been decided. *See, e.g., LaMere, State v. Tapson*, 2001 MT 292, 307 Mont. 428, 41 P.3d 305, and *State v. Bird*, 2002 MT 2, 308 Mont. 75, 43 P.3d 266. In light of the fact that our jurisprudence relative to court communications with the jury is so recent, and given that the district courts have historically had the discretion, conferred by statute, to give or decline to give additional instructions (*see* §46-16-503(2), MCA), we could hardly conclude that Woods' counsel rendered deficient performance in 1995 when he failed to argue on appeal that the trial court's refusal to consult with Woods before denying a request for additional instructions constituted reversible error. See ¶ 26.

¶34 We therefore conclude that Woods' was correctly denied postconviction relief on this issue. While the District Court erred in denying the Petition on its merits, we will affirm a district court's ruling if the court reaches the correct result, even for the wrong reason. *Camarillo v. State*, 2005 MT 29, ¶¶ 18-19, 326 Mont. 35, ¶¶ 18-19, 107 P.3d 1265, ¶¶ 18-19.

## CONCLUSION

¶35 For the foregoing reasons, we affirm the District Court's denial of Woods' Petition for Postconviction Relief.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS