No. 04-652

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 246N

DONALD EUGENE TYRREL,

        Petitioner and Appellant,

   v.

STATE OF MONTANA,

        Respondent and Respondent.

APPEAL FROM:    District Court of the First Judicial District,
                    In and for the County of Lewis and Clark, Cause No. BDC 2001-151
                    The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Donald Eugene Tyrrel, *pro se*, Crossroads Correctional Center, Shelby,
                Montana

        For Respondent:

                Honorable Mike McGrath, Montana Attorney General, Jim Wheelis,
                Assistant Attorney General, Helena, Montana; Leo Gallagher, Lewis and
                Clark County Attorney, Carolyn A. Clemens, Deputy County Attorney,
                Helena, Montana

                        Submitted on Briefs:  June 15, 2005

                        Decided:  October 12, 2005

Filed:

                             Clerk
Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following decision shall not be cited as precedent. Its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable opinions published in the Pacific Reporter and Montana Reports.

¶2     Donald Tyrrel (Tyrrel), appearing *pro se*, appeals the denial of his Petition for Postconviction Relief.  We affirm.

## ISSUE

¶3     The sole issue on appeal is whether the District Court correctly denied Tyrrel's Petition for Postconviction Relief.  Tyrrel claims the court erred in finding:  1) Tyrrel is not a "deaf person" within the meaning of § 49-4-502(2), MCA, and was therefore capable of participating in his defense without the aid of a sign language interpreter; and 2) Tyrrel's counsel effectively assisted him.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     On June 4, 2001, Tyrrel was charged by information with two counts of sexual assault, both felonies, in violation of §§ 45-5-502(1), (3) and (5), MCA. These charges related to sexual contact Tyrrel initiated with the young sons of Tyrrel's friends who left their children in Tyrrel's care on several occasions.

¶5     From birth, Tyrrel has suffered from hearing loss which prevents him from hearing spoken language from a distance, or in settings where there is excessive background noise. However, Tyrrel's expert audiologist testified that so long as a speaker is "close enough, has

2

a good speaking voice, doesn't speak too fast, articulates the words correctly, [and Tyrrel's] visual interpretation is good," Tyrrel can hear, understand, and participate in conversation. The audiologist also confirmed that a speaker could tell from Tyrrel's responses to questions, given the "complexity, the history and the context" of the communication between them, whether Tyrrel accurately heard and understood what was said.

¶6      On June 28, 2001, Tyrrel appeared with counsel and pled not guilty to the charges against him. Each of the two counts carried a potential sentence of two to one hundred years imprisonment. On August 8, 2001, the State filed a Notice of Persistent Felony Offender relating to Tyrrel's prior conviction for a similar offense in Illinois. Trial was set for September 24, 2001. Tyrrel's counsel then prepared for trial, interviewing the parties and potential witnesses, arranging travel and accommodations for out-of-town witnesses coming to testify on Tyrrel's behalf, and preparing Tyrrel for what to expect in the courtroom.

¶7      On the Friday before trial, Tyrrel asked counsel whether the State's plea bargain proposal was still available. As it was, counsel prepared the Plea Agreement for Tyrrel over the weekend, explained the Plea's provisions to Tyrrel, and informed him that the sentence he received would be determined by the District Court and would likely hinge on the results of a sex offender evaluation he would undergo.

3

¶8     On Monday, September 24, 2001, a change of plea hearing was held. Shortly after the hearing began, Tyrrel interrupted the District Court because he could not hear questions asked of him.

> THE COURT: Mr. Tyrrel, I need to tell you just a few things. First off –
>
> TYRREL: I'm sorry, I can't hear you, sir.
>
> COUNSEL: May we approach?
>
> THE COURT: Sure.

¶9     Tyrrel and his attorney then approached to "within a foot" of the bench, and the court addressed Tyrrel face to face in "a loud voice." With the exception of this initial interruption, Tyrrel never again told the court or his counsel that he was unable to hear or understand the proceedings. The hearing then continued with Tyrrel responding to the court's questions.

> TYRREL: I plead guilty, your honor.
>
> THE COURT: Okay. . .Tell me why you plead guilty. What did you do?
>
> TYRREL: I had [sic] fondled Jacob in the penis area with me [sic] hands.
>
> THE COURT: How old was Jacob? . . .
>
> TYRREL: I believe about eight years old.
>
> THE COURT: Your age at the time would have been – what would your age at the time have been?
>
> TYRREL: Forty-four.

¶10 Before accepting his plea, the court questioned Tyrrel about his understanding regarding the guilty plea he was about to enter, and regarding Tyrrel's satisfaction with the performance of his defense attorney.

> THE COURT: Are you physically and mentally capable of proceeding here today?
>
> TYRREL: Yes, I am.
>
> THE COURT: Are you happy with the legal advice you've received from your attorney?
>
> TYRREL: Yes, I am. . .
>
> THE COURT: All righty. And Mr. Tyrrel, I'm told that you are going to plead guilty here. And I want to make sure you're doing so voluntarily. So let me ask you, is anybody, whether it is your lawyer, the county attorney's office, the sheriff's office, anybody at all forcing you or pressuring you into doing this?
>
> TYRREL: No, there is not.
>
> THE COURT: It's your choice.
>
> TYRREL: That is right.

¶11 Tyrrel then pled guilty to Count II of the information after the District Court agreed to dismiss Count I and withdraw the Notice of Persistent Felony Offender on the State's motions. The District Court accepted Tyrrel's guilty plea, and ordered a pre-sentence investigation, including a sex offender evaluation to determine whether community treatment would be appropriate for Tyrrel. Though his sex offense evaluator found Tyrrel would qualify for community treatment if he were strictly monitored, no community-based treatment program would accept Tyrrel. Consequently, on the single remaining charge of

felony sexual assault, Tyrrel was sentenced on February 14, 2002, to sixty years at the Montana State Prison, with thirty years suspended. Tyrrel appealed, but later moved this Court to dismiss his appeal. We issued an Order of Dismissal on May 7, 2004.

¶12 On April 11, 2003, Tyrrel petitioned the District Court for postconviction relief, raising the issues we now consider. The Distict Court held a hearing on the Petition on April 29, 2003, and May 4, 2003, determined that Tyrrel's claims were without merit, and dismissed the Petition.

¶13 The District Court grounded its dismissal on the court's own conversations with Tyrrel, in which the court found Tyrrel's participation to be "appropriate and responsive." The District Court determined that after Tyrrel approached the bench, he heard and understood what was asked of him by the court and responded appropriately. The District Court also relied on its own observations of counsel's representation of Tyrrel, and sworn testimony by Tyrrel's counsel and other witnesses who observed her performance at various stages in Tyrrel's case. Each witness, including Tyrrel's sex offense evaluator who was trained in working with hearing-impaired and deaf persons, had communicated extensively with Tyrrel in preparing his case without the help of sign language interpreters.

¶14 Tyrrel now seeks postconviction relief from this Court claiming that: 1) his impaired hearing, and the court's failure to provide him a sign language interpreter, prevented him from competently participating in his defense; and 2) his attorney misled him about the terms of his plea agreement and therein induced him to plead guilty.

**STANDARD OF REVIEW**

¶15 On appeal from denial of postconviction relief, we review a district court's findings to determine whether they are clearly erroneous, and the district court's conclusions to determine whether the court correctly applied the law. *Lout v. State*, 2005 MT 93, ¶ 11, 326 Mont. 485, ¶ 11, 111 P.3d 199, ¶ 11 (citations omitted).

¶16 Claims of ineffective assistance of counsel present mixed questions of fact and law which this Court reviews *de novo*. *Weaver v. State*, 2005 MT 158, ¶ 13, 327 Mont. 441, ¶ 13, 114 P.3d 1039, ¶ 13.

## DISCUSSION

¶17 First, Tyrrel contends that his hearing loss interfered with his ability to adequately participate at his change of plea proceedings, sex offender evaluation, pre-sentence investigation, and sentencing.

¶18 Montana law requires courts to appoint an interpreter to assist any deaf person who is a party to a judicial proceeding for the purpose of securing the deaf person's constitutional rights during proceedings, and in preparation for proceedings. Sections 49-4-503(1) and 49-4-501, MCA. The mandatory provisions of § 49-4-501 come into play only when a party is determined to be a deaf person within the meaning of the law. As defined by statute, a "deaf person" is one whose hearing: 1) is totally impaired; or 2) "is so seriously impaired as to prohibit the person from understanding oral communications" or communicating spoken language. Section 49-4-502(2), MCA.

¶19 We agree with the District Court's finding that Tyrrel is not a deaf person within the meaning of Montana law. The record demonstrates that Tyrrel's hearing is not totally

7

impaired, and that he is able to speak. It is equally clear from the record that Tyrrel's hearing is not so seriously impaired as to prohibit him from understanding oral communications. The colloquy between Tyrrel and the District Court illustrates Tyrrel's responses were appropriate to the context of the conversation, and that he understood the solemnity of the plea agreement he entered with the State. During his conversations with the District Court Tyrrel did more than simply answer "yes" or "no" when questioned; several times he volunteered additional information not specifically requested by the court while his responses remained relevant to the questions posed. Further, other witnesses, including Tyrrel's sex offense evaluator who has training in communicating with the hearing-impaired, testified that they had successfully communicated with Tyrrel without the use of sign language interpreters. Finally, Tyrrel showed he was willing to notify the District Court in the event he had difficulty hearing, when he interrupted the court at the beginning of his change of plea hearing. When Tyrrel notified the District Court or his counsel he could not hear, they then took appropriate steps to accommodate his hearing impairment. Based upon the foregoing, we conclude the District Court did not err when it determined that Tyrrel's constitutional right to participate in his judicial proceedings was not infringed when the court accepted Tyrrel's participation without a sign language interpreter.

¶20 Tyrrel next argues his court-appointed counsel provided ineffective assistance because she led Tyrrel to believe that if he pled guilty the District Court would sentence him to house arrest, he would undergo sex offender treatment in his community, and he would not go to prison.

¶21    In considering a postconviction claim of ineffective assistance of counsel, this Court applies the two-part test articulated by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *See State v. Woods*, 2005 MT 186, ¶ 13, 328 Mont. 54, ¶ 13, 117 P.3d 152, ¶ 13. To prevail on a claim of ineffective assistance of counsel, the defendant must show not only that counsel's performance was deficient, but also that the deficient performance prejudiced the defendant. *Woods*, ¶ 13. A petitioner claiming ineffective assistance must ground his proof on facts within the record. *Ford v. State*, 2005 MT 151, ¶ 7, 327 Mont. 378, ¶ 7, 114 P.3d 244, ¶ 7.

¶22    We conclude the District Court did not err when it found Tyrrel's counsel was effective. The court's finding is supported by Tyrrel's own testimony, the District Court's observation of counsel's representation of Tyrrel, the extent to which counsel had prepared Tyrrel's case for trial, and sworn testimony by Tyrrel's counsel and other witnesses who observed her performance at various stages in Tyrrel's case. The record here shows that Tyrrel's counsel competently performed her duty to represent Tyrrel's interests. Counsel's performance was not deficient, and therefore Tyrrel's claim of ineffective assistance fails the first hurdle imposed by *Strickland.*

## CONCLUSION

¶23    For the foregoing reasons, we affirm.

/S/ PATRICIA O. COTTER

We Concur:

9

/S/ KARLA M. GRAY

/S/ JOHN WARNER

/S/ W. WILLIAM LEAPHART