IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 04-684

2004 MT 335

_____

| | | |
|---|---|---|
| STATE OF MONTANA, ex rel. | ) | |
| IN THE MATTER OF D.M.B., | ) | |
| | ) | |
| Relator, | ) | |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | AND |
| MONTANA THIRTEENTH JUDICIAL | ) | O R D E R |
| DISTRICT YOUTH COURT, YELLOWSTONE | ) | |
| COUNTY, Honorable Gregory R. Todd, Presiding, | ) | |
| | ) | |
| Respondent. | ) | |

_____

¶1     D.M.B., a juvenile, through counsel of record, filed an application for writ of supervisory control.  By order entered on October 14, 2004, we ordered the Respondent District Court and/or the Yellowstone County Attorney or Montana Attorney General on behalf of Respondent court, to prepare, file and serve a response to the application, which has now been filed.  Further, we granted, at the request of D.M.B., a stay of the Youth Court proceedings herein until resolution of the issues raised in the application.

¶2     The State filed a petition on June 22, 2004, alleging that D.M.B. was a delinquent youth under the Montana Youth Court Act.  The petition alleged that D.M.B. had committed the misdemeanor offenses of assault, criminal mischief, and obstruction of a police officer.  On August 11, 2004, D.M.B. appeared in Youth Court and admitted to the three charged

1

offenses. The Youth Court accepted the admissions and adjudicated D.M.B. to be a juvenile delinquent.

¶3      Prior to D.M.B.'s dispositional hearing, Youth Court Services Officer Becky Wagner prepared a report regarding D.M.B. for the Youth Court. Wagner's report set forth D.M.B.'s juvenile record, including a sex offense which had occurred eight years earlier. In light of this past offense, Wagner recommended that D.M.B. undergo a psychosexual evaluation with a qualified evaluator who would provide the Youth Court with an evaluation prior to the entry of a dispositional order by the Youth Court.

¶4      Wagner further noted the inability or unwillingness of D.M.B.'s parents to contact her office or otherwise appear on D.M.B.'s behalf or to be involved in his life and explained that without a parent or other responsible adult to take responsibility for D.M.B., the youth had nowhere to go. Wagner noted that over the past eight years, D.M.B. had resided in three different residential psychiatric facilities and three different group homes, had a significant history of alleged offenses, and committed the three charged offenses in this matter about one month after his release from his previous placement.

¶5      However, D.M.B., through counsel, objected to the State's request for a psychosexual evaluation, asserting that there was no nexus to the underlying offenses. In response, the Youth Court ordered briefing on the issue, and following oral argument granted the State's request for the evaluation, reasoning that, although there was no nexus between the evaluation and the underlying offenses, the Montana Youth Court Act nevertheless granted

broader discretion to fashion a rehabilitative disposition and, therefore, a predispositional psychosexual evaluation was appropriate. D.M.B. then sought supervisory control.

¶6      Supervisory control is an extraordinary remedy that is only appropriate when a district court is proceeding under a mistake of law which, if not corrected, would cause significant injustice and the remedy by appeal is inadequate. *Evans v. Montana Eleventh Judicial District Court*, 2000 MT 38, ¶ 15, 298 Mont. 279, ¶ 15, 995 P.2d 455, ¶ 15. Our determination of whether supervisory control is appropriate is a case-by-case decision, based on the presence of extraordinary circumstances and the need to prevent an injustice from occurring. *Park v. Sixth Judicial District Court*, 1998 MT 164, ¶ 13, 289 Mont. 367, ¶ 13, 961 P.2d 1267, ¶ 13.

¶7      D.M.B. argues that the District Court is proceeding under a mistake of law in two respects. First, although acknowledging that § 41-5-1512(1)(g) and (i), MCA, provides statutory authority for the Youth Court to order that a youth submit to an evaluation as part of a final disposition, D.M.B. argues that § 41-5-1503, MCA, allows *predisposition* evaluations only when the youth has waived his or her constitutional rights. Because D.M.B. has refused to waive those rights, D.M.B. asserts that the Youth Court's order conflicts with this provision. Secondly, D.M.B., argues that the evaluation is not permitted under this Court's holding in *State v. Ommundson*, 1999 MT 16, 293 Mont. 133, 974 P.2d 620, because no nexus exists between the underlying charges and the psychosexual evaluation.

¶8      The State responds that the Youth Court was authorized to order the psychosexual evaluation under § 41-5-1511(2), MCA. That section provides:

3

> *Before conducting the dispositional hearing*, the court shall direct that a youth assessment or predisposition report be made in writing by a probation officer or an assessment officer concerning the youth, the youth's family, the youth's environment, and other matters relevant to the need for care or rehabilitation or disposition of the case . . . . *The youth court may have the youth examined, and the results of the examination must be made available to the court as part of the youth assessment or predisposition report.*

Section 41-5-1511(2), MCA (emphasis added).

¶9 The State is correct in its assertion that the evaluation ordered in this matter by the Youth Court falls within the plain language of the above-cited provision. However, § 41-5-1503, MCA, contains more specific provisions in regard to predisposition "medical or psychological" evaluations, stating as follows:

> (1) The youth court may order a youth to receive a medical or psychological evaluation at any time *prior to final disposition* if the youth waives the youth's constitutional rights in the manner prior for in 41-5-331 [setting forth advisory and parental notification requirements].

Given the provisions of § 41-5-1503, MCA, regarding predispositional medical and psychological evaluations, which is the kind of evaluation here ordered, it must control, as the more specific provision, over the more general authorization for youth assessments provided to the Youth Court under § 41-5-1511, MCA. As we recently stated:

> It is a well-settled rule of statutory construction that the specific prevails over the general. A particular statutory intent controls over a general one which is inconsistent with it. Section 1-2-102, MCA. Further, when two statutes deal with a subject, one in general and comprehensive terms, and the other in minute and more definite terms, the more definite statute will prevail to the extent of any opposition between them.

*State v. Smith*, 2004 MT 191, 322 Mont. 206, 95 P.3d 137. Thus, the more specific requirements of § 41-5-1503, MCA, including the requirement that the youth waive the

youth's constitutional rights in order to conduct a predispositional medical or psychological evaluation, must be met. Therefore, the Youth Court erred in ordering a predispositional psychosexual evaluation over the youth's objection.

¶10 However, the State argues that even if we would conclude that a predispositional psychosexual evaluation required the youth's waiver of constitutional rights, the Youth Court could nonetheless order the evaluation as part of its final dispositional order pursuant to § 41-5-1512(1)(g) and (i), MCA. That provision provides that the Youth Court may, as part of its disposition, "require the medical and psychological evaluation of the youth" and "order further care, treatment, evaluation or relief that the court considers beneficial to the youth and the community." *See also* § 41-5-1513(1)(a), MCA. We agree. Although the State argues that the psychosexual evaluation would better serve the interests of D.M.B. if conducted prior to disposition, and we do not disagree that a predispositional evaluation may be more convenient, it is clear from the statutes that an evaluation without the youth's consent is authorized only as part of the court's disposition. D.M.B. does not contest this statutory interpretation, but argues that the psychosexual evaluation cannot be ordered in this case by reason of this Court's holding in *State v. Ommundson*, supra.

¶11 In *Ommundson*, a defendant of convicted of DUI challenged the District Court's imposition of sex offender treatment as a condition of sentence. We reversed the imposition of the condition, holding that a sentencing limitation or condition must have "some correlation or connection to the underlying offense for which the defendant is being

sentenced." *Omundson*, ¶ 11. D.M.B. argues that none of the three offenses charged here are sex-related offenses, and therefore, a psychosexual evaluation cannot be ordered.

¶12     However, *Ommundson* does not bar the Youth Court from ordering D.M.B. to undergo a psychosexual evaluation as part of D.M.B.'s disposition. Unlike *Ommundson*, this matter is not a criminal matter, but is brought under the Youth Court Act. Section 41-5-102, MCA, requires that the Act be interpreted and construed to effectuate the "express legislative purposes" of providing for "the care, protection, and wholesome mental and physical development of a youth" as well as "a program of supervision, care, rehabilitation, detention, competency development, and community protection" of a youth. The Youth Court Act's emphasis on the mental and physical care, development and rehabilitation of a youth are statutory directives which were not at issue in *Ommundson*. Further, at this point, the Youth Court has merely ordered a psychosexual evaluation for purposes of D.M.B.'s proper placement and has not ordered sex offender treatment, as in *Ommundson*. The primary purpose of the evaluation, according to Wagner's report, is to assess D.M.B.'s condition so that placement within the appropriate facility can be made. Her report indicated that without the evaluation "no licensed home or facility will accept him in their program. This is especially true given his lengthy placement history and his history of sexual offending." Thus, the challenged evaluation is essential to D.M.B.'s appropriate placement, and, therefore, essential to fulfillment of the purposes of the Youth Court Act.

¶13   D.M.B. makes additional arguments which we conclude are without merit, including a constitutional argument which we conclude is not sufficiently supported by authority. Therefore, we decline to address the additional issues raised in the petition.  Therefore,

¶14   IT IS HEREBY ORDERED that the petition for writ of supervisory control is hereby granted.  This matter is remanded to the Thirteenth Judicial District Youth Court, in and for Yellowstone County, for further proceedings consistent with this order.

¶15   The Clerk is directed to mail copies hereof to all counsel of record and to the Honorable Gregory R. Todd, Youth Court Judge.

DATED this 24th day of November, 2004.

/S/ JIM RICE
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER

Justice John Warner concurring.

¶16    I agree with the Court's order.  However, it appears from the record that the information necessary to place the youth is available in records of examinations and treatment that have already been prepared.  The County Attorney represented to the Court that he could not get copies of such records without the consent of the youth's mother, and she is not only unwilling to cooperate, she is hiding from the law.

¶17    I fail to see why the District Court accepted without question the representation that the records could not be recovered.  A court order to the custodian of the records could have avoided this whole problem.  Also, since the mother does not seem to be in the picture, the appointment of a *guardian ad litem* may have served to avoid this procedure.

¶18    It is not always necessary to do things the hard way.


                                                        /S/ JOHN WARNER