FILED

November 25 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 09-0021

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 404N

IN THE MATTER OF E.G.,

A Youth.

APPEAL FROM: District Court of the Seventh Judicial District,
In and For the County of Dawson, Cause No. DJ 08-01
Honorable Richard A. Simonton, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Jim Wheelis, Chief Appellate Defender; Tammy A. Hinderman,
Assistant Appellate Defender, Helena, Montana

For Appellee:

Hon. Steve Bullock, Montana Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana

Scott Herring, Dawson County Attorney; Marvin L. Howe, Deputy
County Attorney, Glendive, Montana

Submitted on Briefs: September 30, 2009

Decided: November 24, 2009

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent.  It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      E.G. was adjudged a delinquent youth in the Seventh Judicial District Youth Court, Dawson County. The Youth Court committed E.G. to the custody of the Department of Corrections until he is 18 years old, with a recommendation that he be placed at the Pine Hills Youth Correctional Facility and with the court retaining jurisdiction over him until he is 21.  E.G. appeals.  We reverse and remand for further proceedings consistent with this Opinion.

¶3      E.G. raises five issues on appeal, two of which are conceded by the State of Montana.  Specifically, the State concedes the Youth Court lacked authority to condition E.G.'s release from Pine Hills on his successful completion of Pine Hills' sexual offender treatment program and, because E.G. was not adjudicated of a sexual offense, the State concedes the Youth Court was without authority to designate him a sexual offender or assign him a risk level for sexual offenses.  As a result of these conceded errors, it is clear at the outset that this case must be remanded for correction of the dispositional order.

¶4      The remaining issues are:

2

¶5     Issue One:  Did the Youth Court violate E.G.'s due process rights by basing its disposition on materially false information?

¶6     Issue Two:  Did the Youth Court commit plain error when it based its disposition on E.G.'s predispositional psychosexual evaluation?

¶7     Issue Three:  Did the Youth Court err in conditioning E.G.'s parole on successful completion of outpatient sexual offender treatment?

¶8     Issue Four:  Did E.G.'s counsel provide ineffective assistance by failing to challenge the request for a predispositional psychosexual evaluation, to object to the use of that evaluation at the dispositional hearing, or to inform E.G. that he had the right to refuse to participate?

BACKGROUND

¶9     In February of 2008, the State filed a petition to have 15-year-old E.G. declared a delinquent youth.  The petition alleged E.G. had forced his 18-year-old stepsister to have sexual intercourse with him at knifepoint.  The petition further alleged E.G. had, on another occasion, threatened his stepsister by placing a knife on her chest and, on yet another occasion, had held a knife to the throat of a 15-year-old friend of his stepsister's and threatened to harm her.  Finally, the petition alleged that in the days after he placed a knife on his stepsister's chest and held a knife to the throat of her friend, E.G. threatened both of them with harm if they told anyone about the acts he had committed against them. The State charged E.G. with conduct which, if committed by an adult, would constitute five felonies:  sexual intercourse without consent, three counts of assault with a weapon, and intimidation.  E.G. eventually admitted to the latter two counts of assault with a

3

weapon and to intimidation, and the State dismissed the first two counts alleged against him—sexual intercourse without consent and the concurrent assault with a weapon.

¶10     At the dispositional hearing, the State presented testimony by Steven Bailey, a probation and parole officer who had prepared a social history for the court, including a psychosexual evaluation of E.G. conducted by Michael Sullivan, M.S.W.  Bailey stated he relied "strongly" on Sullivan's recommendations, as a result of which he proposed that E.G. be required to complete sex offender treatment.  According to Bailey, he had contacted five potential placement options for E.G. which had refused to accept E.G. because of the violence of his actions or because the placements lacked sex offender treatment programs.  Bailey testified Pine Hills had agreed to accept E.G. and, although Pine Hills had never before had anyone in its sex offender program who had not been adjudicated of a sexual offense, it had agreed to put E.G. in that program.

¶11     E.G. presented testimony by Dr. William D. Woolston, a clinical psychologist who had evaluated him at his counsel's request and diagnosed him as possibly bipolar.  E.G. also testified, objecting to the recommendation that he receive sexual offender treatment on grounds that he had no current sex charge against him.

¶12     The Youth Court found it would be contrary to E.G.'s welfare for him to continue living in his home.  In addition to committing E.G. to the custody of the Department until he turns 18 with the recommendation that he be placed at Pine Hills, the Youth Court required E.G. to register as a violent offender and imposed numerous other conditions for the time he is confined at Pine Hills and afterward.  Among those, the court ordered E.G. to complete the Pine Hills sex offender treatment program before his release from Pine

4

Hills and to enroll, attend, and successfully complete an outpatient sex offender treatment program following his release from Pine Hills. The court also found that E.G. was a Level 2 sexual offender.

¶13 E.G. appeals. As mentioned above, the State has conceded on appeal that the Youth Court has no statutory authority to condition E.G.'s release from Pine Hills on his successful completion of sex offender treatment there. Pursuant to § 52-5-101, MCA, he must be released from Pine Hills when he attains the age of 18, whether he has completed sex offender treatment or not. In addition, the State has conceded that, because E.G. was not adjudicated of a sexual offense as defined by statute, the court had no authority to classify him as a sexual offender.

## DISCUSSION

¶14 *Issue One: Did the Youth Court violate E.G.'s due process rights by basing its disposition on materially false information?*

¶15 The constitutional adequacy of youth court proceedings for due process purposes is judged by "fundamental fairness," with an emphasis on those procedures that ensure "accurate factfinding." *McKeiver v. Pennsylvania*, 403 U.S. 528, 543, 91 S. Ct. 1976, 1985 (1971). We exercise plenary review of constitutional issues of due process. *In re C.R.C.*, 2009 MT 125, ¶ 13, 350 Mont. 211, 207 P.3d 289.

¶16 This issue relates to the following statement by the Youth Court as it was pronouncing the disposition: "I note that the affidavit in this case indicates that you admitted to sexual intercourse without consent, [and] that there's been no rebuttal of that." After the Youth Court finished its oral statement of disposition, counsel for the

youth pointed out to the court that, while E.G. had admitted to having had sexual intercourse with his stepsister, he had made no admissions about her consent or lack thereof, and he denied using a knife during that incident. No further discussion was held; the court recessed immediately after counsel's clarification.

¶17 The difference between admitting to having had sexual intercourse with an adult and admitting to having had sexual intercourse without consent is a material difference. The record does not indicate the Youth Court re-reviewed E.G.'s admission, revised its view of the admission, or made any changes to its disposition in light of counsel's clarification of the limited scope of E.G.'s admission.

¶18 We already have determined this matter must be remanded for entry of a modified dispositional order, as a result of the issues conceded by the State. Because the record strongly suggests the Youth Court may have based its disposition on materially false information—namely the extent of E.G.'s admission relating to the events underlying charges which were dismissed—we further conclude fundamental fairness requires that a new dispositional hearing must be held.

¶19 *Issue Two: Did the Youth Court commit plain error when it based its disposition on E.G.'s predispositional psychosexual evaluation?*

¶20 Section 41-5-1503, MCA, allows a youth court to order a youth to receive a medical or psychological evaluation at any time prior to final disposition if the youth waives his or her constitutional rights as provided in § 41-5-331, MCA. In this case, the Youth Court did not order the psychosexual examination. Instead, it appears probation

officer Bailey made the decision to have the examination conducted as part of the social history of E.G. he prepared for the court.

¶21 Section 41-5-1511(2), MCA, provides that, before conducting a dispositional hearing, a youth court

> shall direct that a youth assessment or predisposition report be made in writing by a juvenile probation officer or an assessment officer concerning the youth, the youth's family, the youth's environment, and other matters relevant to the need for care or rehabilitation or disposition of the case . . . . The youth court may have the youth examined, and the results of the examination must be made available to the court as part of the youth assessment or predisposition report.

We have held that when a youth court orders a psychosexual evaluation of a youth, the more specific provisions of § 41-5-1503, MCA, must be satisfied, in that a youth court may order a psychosexual evaluation only upon waiver of rights by the youth. *State ex rel. D.M.B. v. Thirteenth Jud. Dist. Youth Court*, 2004 MT 335, ¶ 9, 324 Mont. 190, 103 P.3d 514. In *D.M.B.*, we further held the youth court erred in ordering a psychosexual report over the youth's objection. *D.M.B.*, ¶ 9.

¶22 The Youth Court did not order the psychosexual evaluation here. Rather, the psychosexual evaluation was done at Bailey's request for purposes of the dispositional report he was preparing for the court. Also, at the dispositional hearing, counsel for the State represented to the court that the psychosexual evaluation "was basically consented to by the defense." Although E.G.'s counsel placed several other objections on record, he neither objected to nor disputed the statement that the psychosexual evaluation "was basically consented to by the defense." However, the record contains no document by which E.G. waived his constitutional rights in relation to such an examination.

7

¶23 It is not clear from the record before this Court that the psychosexual evaluation conducted in this case ran afoul of *D.M.B.* On remand, the parties may wish to present further evidence and argument on whether the psychosexual evaluation may be considered.

¶24 *Issue Three: Did the Youth Court err in conditioning E.G.'s parole on successful completion of outpatient sexual offender treatment?*

¶25 E.G. contends the Youth Court lacked authority to require him to "enroll[ ], attend[ ], and successfully complet[e]" an outpatient sex offender treatment program while on parole between the ages of 18 and 21. He argues that portion of the disposition should be stricken. This matter was briefed within the issue of whether the court erred in ordering E.G. to complete sex offender treatment before he could be released from Pine Hills, which the State has conceded. However, the State did not concede this point.

¶26 The State addresses this argument only generally, by pointing out that the Youth Court retained jurisdiction over E.G. until he is 21—for which it had authority under § 41-5-205(1), MCA. The State also references a youth court's broad authority to order care, treatment, evaluation, or other relief that the court considers beneficial to the youth and the community. Under that statute and *D.M.B.*, the Youth Court was within its authority to order E.G. to undergo outpatient sex offender treatment until he is 21, with the caveat that the court cannot require him to successfully *complete* an outpatient program by the time he reaches the age of 21.

¶27 *Issue Four: Did E.G.'s counsel provide ineffective assistance by failing to challenge the request for a predispositional psychosexual evaluation, to object to the use of that evaluation at the dispositional hearing, and to inform E.G. that he had the right to refuse to participate?*

¶28 E.G.'s reply brief clarifies that this issue is raised in the alternative to a new dispositional hearing without consideration of the psychosexual evaluation. Because we have directed the Youth Court to conduct a new dispositional hearing, we decline to address this issue further.

¶29 Remanded for further proceedings consistent with this Opinion.

/S/ MIKE McGRATH

We concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE